IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,  3:13-cv-00562-MA

        Plaintiff,  OPINION AND ORDER

  v.

$166,450.48 IN UNITED STATES
CURRENCY, et al., *in rem*,

        Defendants.

S. AMANDA MARSHALL
United States Attorney
District of Oregon
KATHERINE C. LORENZ
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

    Attorneys for Plaintiff

DAVID H. ANGELI
NOAH H. ELLENBERG
BENJAMIN N. SOUEDE
Angeli Law Group LLC
121 S.W. Morrison Street, Suite 400
Portland, OR 97204

    Attorneys for Claimant Michael Knezevich

///

1 - OPINION AND ORDER

NORMAN SEPENUK
520 S.W. Yamhill Street, Suite 600
Portland, OR 97204

    Attorney for Claimant VanHaverbeke

PAUL J. PASCHELKE
9320 S.W. Barbur Blvd., Suite 135
Portland, OR 97219

    Attorney for Claimant Barney

RONALD V. CHOTT
14950 N.W. Oak Hills Dr.
Beaverton, OR 97006

    Claimant, *pro se*

MAUREEN ANNE & MICHAEL JOHN KLOBERTANZ
7535 S.E. Reed College Place
Portland, OR 97202

    Claimants, *pro se*

MOUNT HOOD MINISTRY
c/o Scott D. Haanstad
P.O. Box 1825
Hood River, OR 97031

    Claimant, *pro se*

MARSH, Judge

    Plaintiff, the United States of America, brings this civil forfeiture proceeding pursuant to 18 U.S.C. §§ 981(a)(1)(A), and 28 U.S.C. §§ 1345, 1355 & 1395. Currently before the court are motions for summary judgment by Claimants VanHaverbeke, Barney, Maureen & Michael Klobertanz (#29, #32, & #49); motion for oral argument by Claimant VanHaverbeke (#31); and the government's motion to extend stay of proceedings to all claimants (#38).

2 - OPINION AND ORDER

**BACKGROUND**

On April 2, 2013, the government filed the instant proceeding seeking the forfeiture of $166,450.48 in United States currency seized from Chase Bank account number XXXXXX3320; $121,000.00 in United States currency seized from Alder Gold Exchange; and $372,000.00 worth of assorted precious metals also seized from Alder Gold Exchange. In its complaint, the government alleges that the defendant currency and assorted precious metals are forfeitable because they were involved in transactions or attempted transactions by Michael Knezevich, the owner and operator of Alder Gold Exchange, in violation of 18 U.S.C. § 1960 (unlawful money transmitting business).

To establish a violation of section 18 U.S.C. § 1960(a), the government must prove that a defendant knowingly conducts, controls, manages, supervises, directs, or owns an unlicensed money transmitting business. 18 U.S.C. § 1960(a) & (b)(1)(B); 31 U.S.C. 5330; see also U.S. v. 47 10-Ounce Gold Bars, 2005 WL 221259 (D.Or. Jan. 28, 2005). "[T]he term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfer within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(2).

In support of its complaint, the government attached the declaration of Internal Revenue Service (IRS) Special Agent Scott

McGeachy. Agent McGeachy attests that on October 29, 2012, agents from the IRS Criminal Investigation Unit and the Portland Police Bureau seized the defendant currency and precious metals from three safes located at Alder Gold Exchange, and a Chase Bank account in the name of Precious Metals & Gems, dba Alder Gold Exchange. According to Agent McGeachy, at the time of the seizure Knezevich was unable to differentiate the contents of the three safes as to whether various items belonged to him or to Alder Gold Exchange customers. McGeachy Dec. at ¶¶ 5 & 24. Knezevich allegedly told officers that the metals located in any of the safes "might reflect his personal precious metals, precious metals owned by ALDER GOLD EXCHANGE, or precious metals due to a client." Id. at ¶ 42.

In an attempt to support the government's contention that Knezevich was conducting an unlicensed money transmitting business, Agent McGeachy examined two Alder Gold Exchange bank accounts and discovered what he believes were checks and wire transfers to third parties on behalf of Alder Gold Exchange customers. Id. at ¶¶ 25-28, 31-37. According to McGeachy, two customers confirmed that they sold gold to Alder Gold Exchange and, in turn, Knezevich transferred funds on their behalf to third parties. Id. at ¶¶ 29-30 & 38, see also ¶ 63. Knezevich also allegedly confirmed this type of transaction on behalf of a customer identified as "L.S." to Trinity Life Ministries, but denied writing checks to car

dealerships, brokerage accounts, or credit card companies. Id. at ¶¶ 35 & 41.

After being advised of his Miranda rights, Knezevich allegedly explained the manner in which customers' money and precious metals were handled:

> * * * KNEZEVICH does not charge [customers] a fee, per se, to store their gold. However, KNEZEVICH gets the benefit of a zero interest loan. KNEZEVICH stated he will use his customers' precious metals to sell to a different client at any time without obtaining customer approval. KNEZEVICH stated he will eventually replace the customers' precious metals in the safe at a later date when the price of the metal is most beneficial for KNEZEVICH. KNEZEVICH stated he uses his clients' precious metals and/or cash without asking their permission and whenever it is most beneficial to KNEZEVICH's bottom line of earning a profit through ALDER GOLD EXCHANGE. KNEZEVICH admitted that he currently owes some of his clients several thousand dollars.
>
> * * * * *
>
> KNEZEVICH stated that if he owed a client $200,000.00 he might take metal from ALDER GOLD or from his personal collection of metal or from another client's metal collection to pay off the client requesting the $200,000.

McGeachy Dec. at ¶¶ 40 & 42, see also ¶ 18. According to Agent McGeachy, several customers confirmed the fungible nature of the precious metals they stored at Alder Gold Exchange. Id. at ¶¶ 53 & 57.

On July 1, 2013, I granted Claimant Michael Knezevich's unopposed motion to stay this proceeding, as to his claim only, during the pendency of a related criminal investigation into whether he violated 18 U.S.C. § 1960. The government now moves to

5 - OPINION AND ORDER

extend the stay to all claimants because civil discovery will adversely affect the government's ability to conduct the related criminal investigation. The government argues that discovery will reveal the government's trial strategy in advance of trial; resolution of this case is complicated by the fact that it is stayed as to Knezevich; and the government should not be required to provide pre-indictment discovery. In support of these allegations, the government has submitted the *ex parte* affidavit of Agent McGeachy.

### DISCUSSION

Pursuant to 18 U.S.C. § 981(g)(1), "[u]pon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." Under this provision, a stay may be granted regardless of whether the opposing claimant is a target of the related criminal investigation, so long as the government meets its burden of demonstrating that civil discovery would adversely affect its investigation. U.S. v. 700 Upper Applegate Rd., Jacksonville, Jackson Cty. and Dist. of Oregon, 2013 WL 1767940 (D.Or. Apr. 24, 2013); U.S. v. Approx. $69,577 in U.S. Currency, 2009 WL 1404690 *3 (N.D. Cal. May 19, 2009); U.S. v. Assorted Firearms, Motorcycles and Other Personal Property, 677 F.Supp.2d 1214, 1216 (C.D. Cal.

6 - OPINION AND ORDER

2009); & 18 U.S.C. § 981(g)(4). If the government requests the stay, it may submit evidence *ex parte* in order to avoid disclosing any matter that may adversely affect the ongoing criminal investigation. 18 U.S.C. § 981(g)(5).[1]

The pending criminal investigation of Knezevich and this civil forfeiture proceeding are "related" because they arise out of the same facts and circumstances and involve common parties. See 18 U.S.C. § 981(g)(4). Hence, the government's evidence in this proceeding will overlap with that presented in a criminal prosecution. After reviewing the government's complaint and the supporting affidavit, as well as Agent McGeachy's *ex parte* affidavit, I find that civil discovery likely will adversely affect the ability of the government to conduct the related criminal investigation of Knezevich because it will subject the government's criminal investigation to broader and earlier discovery than would occur in a related criminal proceeding.

Although claimants argue that no additional discovery is necessary for the entry of summary judgment in their favor, I conclude that the government would be compelled to engage in

---

[1] I reject claimants' assertion that Agent McGeachy's *ex parte* affidavit was submitted in opposition to claimants' motions for summary judgment (rather than pursuant to 18 U.S.C. § 981(g)(5)), or that its sufficiency is governed by Fed. R. Civ. P. 56(d). Cf. See U.S. v. Real Property Located at 149 G Street, Lincoln, CA, Placer Cty., 2013 WL 2664770 *4 (E.D. Cal. June 12, 2013) (conclusion that action should be stayed similarly satisfied requirements of Fed. R. Civ. P. 56(d)).

7 - OPINION AND ORDER

discovery and/or reveal information and evidence previously collected in the course of its criminal investigation in order to effectively respond to claimants' assertions that they are innocent owners and/or bona fide purchasers entitled to the return of their property. The necessary disclosure of the government's tracing theories and identification of relevant transactions would run the risk of prematurely revealing evidence Knezevich could use in his defense. See U.S. v. Real Property Located at 6415 North Harrison Ave., Fresno Cty., 2012 WL 4364076 *3 (E.D. Cal. Sept. 21, 2012); Assorted Firearms-Motorcycles and Other Personal Property, 677 F.Supp.2d at 1216.

Moreover, given the number and complexity of the financial transactions at issue, it is likely that discovery would need to take place before this court could determine if there is a genuine issue of fact as to whether each claimant is a bailee (entitled to raise the defense of being an innocent owner), or simply an unsecured creditor.[2] See U.S. v. Approx. $69,577 in U.S. Currency, 2009 WL 1404690 *3 (staying civil forfeiture case so as not to subject government to broader and earlier discovery than would occur in criminal proceeding); U.S. v. Felber, 1996 WL 795555

---

[2] Unsecured creditors lack standing to challenge the civil forfeiture of their debtor's property because they cannot claim an interest in any particular asset that makes up the debtor's estate. U.S. v. $20,193.39 U.S. Currency, 16 F.3d 344, 346 (9th Cir. 1994); 47 10-Ounce Gold Bars, 2005 WL 221259 *4; 18 U.S.C. § 983(d)(6)(B)(i).

(D.Or. Oct. 30, 1996) ("[i]t is necessary to examine the intent of the parties and duties assumed by those parties to resolve whether a bailment exists"). Accordingly, I conclude that a stay must be entered in accordance with 18 U.S.C. § 981(g)(1).

### CONCLUSION

Based on the foregoing, the government's motion to extend stay of proceedings to all claimants (#38) is GRANTED. Pursuant to 18 U.S.C. § 981(g)(1), the stay previously entered in this case is extended to all claimants for a period of 120 days. At the conclusion of 120 days, the parties shall submit a joint status report addressing the propriety of continuing the stay. Claimants' motions for summary judgment and for oral argument (#29, #31, #32, & #49) are HELD IN ABEYANCE during the pendency of the stay.

IT IS SO ORDERED.

DATED this /6 day of December, 2013.

/s/ Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge