IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                                    3:13-cv-00562-MA

                Plaintiff,                            OPINION AND ORDER

    v.

$166,450.48 IN UNITED STATES
CURRENCY SEIZED FROM CHASE
BANK ACCOUNT NO. XXXXXX3320,

$121,000.00 IN UNITED STATES
CURRENCY, and

APPROXIMATELY $372,000.00
WORTH OF ASSORTED PRECIOUS
METALS, ALL SEIZED FROM THREE
SAFES AT ALDER GOLD EXCHANGE
ON OCTOBER 29, 2012, *in rem*,

                Defendants.

S. AMANDA MARSHALL
United States Attorney
District of Oregon
KATHERINE C. LORENZ
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

    Attorneys for Plaintiff

///
///

1 - OPINION AND ORDER

DAVID H. ANGELI
BENJAMIN N. SOUEDE
Angeli Law Group LLC
121 S.W. Morrison Street, Suite 400
Portland, OR 97204

     Attorneys for Claimant Michael Knezevich

NORMAN SEPENUK
520 S.W. Yamhill Street, Suite 600
Portland, OR 97204

     Attorney for Claimant VanHaverbeke

PAUL J. PASCHELKE
9320 S.W. Barbur Blvd., Suite 135
Portland, OR 97219

     Attorney for Claimant Barney

RONALD V. CHOTT
14950 N.W. Oak Hills Dr.
Beaverton, OR 97006

     Claimant, *pro se*

MAUREEN ANNE & MICHAEL JOHN KLOBERTANZ
7535 S.E. Reed College Place
Portland, OR 97202

     Claimants, *pro se*

MOUNT HOOD MINISTRY
c/o Scott D. Haanstad
P.O. Box 1825
Hood River, OR 97031

     Claimant, *pro se*

MARSH, Judge

     The United States of America brings this civil forfeiture

proceeding pursuant to 18 U.S.C. §§ 981 and 984; and 28 U.S.C.

§§ 1345, 1355, 1356 and 1395.  Currently before the court are the motions for summary judgment by Claimants Joe VanHaverbeke, Neal D. Barney, Maureen and Michael Klobertanz, and Mount Hood Ministry. For the reasons set forth below, claimants' motions are denied.

### BACKGROUND

### I.    Seizure of Currency and Precious Metals

The government seeks the forfeiture of $166,450.48 in U.S. Currency, $121,000.00 in U.S. Currency, and approximately $372,000.00 worth of assorted precious metals, on the basis that they were involved in transactions or attempted transactions in violation of 18 U.S.C. § 1960 (unlawful money transmitting business) by Michael Knezevich, the owner and operator of Alder Gold Exchange.  In support of its complaint, the government relies on the declaration of Internal Revenue Service Special Agent Scott McGeachy.

According to Agent McGeachy, Knezevich was operating an unlicensed money transmitting business by buying and selling metals to and from customers, storing the customers' metals on site, keeping customers' cash on deposit, and writing checks or wiring money on behalf of his customers directly to third parties, including trusts, brokerage accounts, automobile dealerships, and credit card companies.

On October 29, 2012, agents from the IRS Criminal Investigation Unit and the Portland Police Bureau seized the

defendant currency and precious metals from three safes located at Alder Gold Exchange, and a Chase Bank account in the name of Precious Metals & Gems, dba Alder Gold Exchange.    Agent McGeachy states that when the property was seized, Knezevich was unable to differentiate the contents of the three safes, explaining to officers that the metals located in the three safes "might reflect his personal precious metals, precious metals owned by ALDER GOLD EXCHANGE, or precious metals due to a client."

   After being advised of his <u>Miranda</u> rights, Knezevich made the following statements regarding his operation of Alder Gold Exchange:

> KNEZEVICH stated that clients keep their money on deposit with KNEZEVICH because they don't trust banks. KNEZEVICH does not charge them a fee, *per se*, to store their gold. However, KNEZEVICH gets the benefit of a zero interest loan.   KNEZEVICH stated he will use his customers' precious metals to sell to a different client at any time without obtaining customer approval.   KNEZEVICH stated he will eventually replace the customers' precious metals in the safe at a later date when the price of the metal is most beneficial for KNEZEVICH.   KNEZEVICH stated he uses his clients' precious metals and/or cash without asking their permission and whenever it is most beneficial to KNEZEVICH's bottom line of earning a profit through ALDER GOLD EXCHANGE.   KNEZEVICH admitted that he currently owes some of his clients several thousand dollars.
>
> \* \* \* \* \*
>
> KNEZEVICH maintained precious metals owned by customers in all three safes located within the office of ALDER GOLD EXCHANGE.   KNEZEVICH explained that the metals located in any of the safes might reflect his personal metals, precious metals owned by ALDER GOLD EXCHANGE, or precious metals due to a client.   KNEZEVICH stated that if he owed a client $200,000.00 he might take metal from

4 - OPINION AND ORDER

ALDER GOLD or from his personal collection of metal or from another client's metal collection to pay off the client requesting the $200,000.

Agent McGeachy examined two Alder Gold Exchange bank accounts and discovered checks and wire transfers to third parties on behalf of several customers. Two customers confirmed that they sold gold to Alder Gold Exchange, and Knezevich, in turn, transferred funds on their behalf to third parties. Knezevich confirmed that he carried out this type of transaction to Trinity Life Ministries, on behalf of a customer identified as "L.S.," but denied writing checks to car dealerships, brokerage accounts, or credit card companies.

## II. Customer Claims

The following customers of Alder Gold Exchange have filed claims seeking the recovery of currency and precious metals seized from Alder Gold Exchange:[1]

### A. Joe VanHaverbeke

Joe VanHaverbeke claims that he is the lawful owner of 151.45 ounces of miscellaneous gold coins seized by the government. In support of his motion for summary judgment, VanHaverbeke declares that he entrusted his gold with Knezevich with the following understanding:

---

[1] Michael Knezevich also filed a claim as a bailee for his customers. However, his claim has been stayed during the pendency of a related criminal investigation. Order (#21); see also U.S. v. 2.7250 Acres of Real Prop., 3:12-cv-01963-MA.

I always had access to the gold I entrusted to and stored with Mr. Knezevich.  I never paid Mr. Knezevich any money to store the gold.  *He was free to sell the gold as long as this gold was replaced by gold of equal or greater value.*  Mr. Knezevich told me that he would always have sufficient inventory on hand (including gold and silver) equal to the value of the gold I stored with him.

**B.   Neal Barney**

Neal Barney seeks to recover 105 ounces of miscellaneous gold coins, $2,000 in U.S. currency, and one canvas bank coin bag labeled "Neal."  Barney declares that in 2008 he purchased 6,300 ounces of silver bars and 33 ounces of assorted gold coins from Knezevich.  According to Barney, between June of 2008, and February 6, 2012, the composition of his investment changed because he reinvested his holdings with Knezevich in an attempt to capitalize on price shifts in the market.  Barney's description of Knezevich's authority to sell his precious metals is identical to that of VanHaverbeke, with the exception that Barney states that Knezevich's authority was limited to selling a "few ounces."  Claimant Barney elaborated in a second declaration:

Mr. Knezevich agreed that he could only dispose of my gold by selling it to customers of Alder Gold if he needed it [to] complete a transaction that he could not cover with his own inventory.  Otherwise, he was required to keep the exact gold that I entrusted to him.  Mr. Knezevich further agreed that he would release my gold to me at any time upon my request.

///

**C.   Maureen and Michael Klobertanz**

Maureen and Michael Klobertanz seek to recover eleven 100-ounce silver bars and $225,470.00 in U.S. Currency. The Klobertanz state that their agreement with Knezevich was "to use him as a broker" for the purpose "of using the lows and highs in the precious metals market to increase claimant's property in precious metal and currency." Ms. Klobertanz attests that the currency was stored at Alder Gold "for safe keeping and convenience of future metal exchange[s]," but she "never consented to or had any knowledge of Michael Knezevich using the metals or currency . . . for his use or any other business."

D. **Mount Hood Ministry**

Mt. Hood Ministry, through its Executive Director Scott Haanstad has filed a claim to 403 ounces of silver. Haanstad's description of Knezevich's authority to sell his precious metals is identical to that of Claimant VanHaverbeke.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of proving the absence of a genuine dispute of material fact. City of Pomona v. SXM North America Corp., 750 F.3d 1036, 1049 (9th Cir. 2014)(citing Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986)). This court reviews the evidence in the light most favorable to the non-moving party, and must draw all reasonable

inferences in favor of that party. <u>City of Pomona</u>, 750 F.3d at 1049; <u>U.S. v. Real Prop. 874 Gartel Dr., Walnut, Calif.</u>, 79 F.3d 918, 921 (9th Cir. 1996).

## DISCUSSION

A civil forfeiture operates *in rem* against the property on the theory that the property itself is guilty of wrongdoing. <u>U.S. v. Liquidators of European Federal Credit Bank</u>, 630 F.3d 1139, 1149 (9th Cir. 2011). In the instant proceeding, the government seeks the forfeiture of currency and precious metals pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 984, which provide for the forfeiture of property, real or personal, involved in a transaction or attempted transaction by an unlicensed money transmitting business in violation of 18 U.S.C. § 1960.[2]

Claimants move for summary judgment on the basis that they are innocent owners whose property is not subject to forfeiture. <u>See</u> 18 U.S.C. § 983(d)(1). The government opposes summary judgment on the basis that there are genuine issues of material fact as to (1) whether claimants are "owners" of the seized property as defined by

---

[2] To establish a violation of 18 U.S.C. § 1960(a), the government must prove that a defendant knowingly conducts, controls, manages, supervises, directs, or owns an unlicensed money transmitting business. 18 U.S.C. § 1960(a) & (b)(1)(B); 31 U.S.C. 5330; <u>U.S. v. 47 10-Ounce Gold Bars</u>, 2005 WL 221259 (D.Or. Jan. 28, 2005). "[T]he term 'money transmitting' includes transferring funds on behalf of the public by any and all means including but not limited to transfer within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(2).

18 U.S.C. § 983(d)(6); (2) whether claimants are "innocent owners" as defined by 18 U.S.C. § 983(d)(2) & (3); and (3) how much, if any, of the seized currency and precious metals belong to each claimant.[3]

A claimant seeking recovery of property subject to a civil forfeiture proceeding must demonstrate Article III standing by showing that he or she has a colorable interest in the property, which includes an ownership interest or a possessory interest in the specific property seized. U.S. v. $133,420 in U.S. Currency, 672 F.3d 629, 637-38 (9th Cir. 2012); U.S. v. Real Prop. Located at 475 Martin Lane, Beverly Hills, CA, 545 F.3d 1134, 1140 (9th Cir. 2008).

Although the burden of demonstrating a colorable ownership interest is not a heavy one, federal courts have consistently held that *unsecured creditors* of the person whose property was seized lack a sufficient property interest to have standing to challenge the forfeiture. U.S. v. $20,193.39 U.S. Currency, 16 F.3d 344, 346 (9th Cir. 1994); U.S. v. One Hundred Thirty-Three (133) U.S. Postal Serv. Money Orders Totaling $127,479.24 in U.S. Currency, 496 Fed. Appx. 723, 724 (9th Cir. 2012); see 18 U.S.C. § 983(d)(6)(B)(I) (excluding "a person with only a general unsecured interest in, or

---

[3]  I reject the government's additional argument that summary judgment should be denied on the basis that the government has yet to conduct discovery.

claim against, the property or estate of another" from the definition of "owner"). The Ninth Circuit explains:

> "Unlike secured creditors, general creditors cannot claim an interest in any particular asset that makes up the debtor's estate. For this reason, the federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.

$20,193.39 U.S. Currency, 16 F.3d at 346.

Claimants contend that they are not unsecured creditors, but rather the lawful owners of the property that was held by Knezevich as a bailee. In resolving this conflict, I apply the law of the state giving rise to the property interest (in this case Oregon). U.S. v. Real Prop. Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004). Federal statutory law, in turn, determines whether that interest is sufficient to overcome the government's interest in forfeiture. See 18 U.S.C. § 983(d)(6).

Oregon law defines a bailment as the delivery of personal property by one person to another, to be held according to the purpose or object of the delivery, and to be returned when that purpose is accomplished. Gage v. All Nations Ins. Co., 314 Or. 700, 706, 842 P.2d 784 (1992); Dundas v. Lincoln Cty., 48 Or. App. 1025, 1031-32, 618 P.2d 966 (1962); U.S. v. Felber, 1996 WL 795555 *1 (D.Or. Oct. 30, 1996). It is necessary to examine the intent of the parties and duties assumed by those parties to resolve whether a bailment exists. Dundas, 48 Or. App. at 1032; Felber, 1996 WL

795555 *1. A bailment will not be implied where it appears that it was the intention of the parties, viewing all of the surrounding circumstances, that the property was to be held in some capacity other than a bailment. Owen v. Bradley, 231 Or. 94, 103, 371 P.2d 966 (1962); Dundas, 48 Or. App. at 1032; Felber, 1996 WL 795555 *1. Savage v. Salem Mills Co., 48 Or. 1, 85 P. 69 (1906).

The government contends that Knezevich is not a bailee of claimants' property, and that claimants are properly regarded as unsecured creditors. Because an unsecured creditor does not claim an interest in the "*specific property* sought to be forfeited," but rather has an interest in the funds/property as a whole, he or she is not an "owner" of the seized property for purposes of civil forfeiture. 18 U.S.C. § 983(d)(6)(B)(I) (emphasis added); $20,193.39 U.S. Currency, 16 F.3d at 346; U.S. v. 47 10-Ounce Gold Bars, 2005 WL 221259 *4 (D.Or. Jan. 28, 2005); Felber, 1996 WL 795555 *3; United States v. BCCI Holdings (Luxembourg), S.A., 73 F.3d 403, 405 (C.A.D.C. 1996).

Viewing the evidence in the light most favorable to the government, and in light of (1) Knezevich's statements to investigators regarding his authority to buy and sell precious metals to and from his customers, keep his customers' cash on deposit, and his admission that he wrote a check on behalf of at least one customer directly to a third party; (2) the majority of claimants' declarations that they understood Knezevich could sell

their precious metals provided that they were replaced with precious metals of equal or greater value; and (3) Agent McGeachy's interviews of customers and examination of Alder Gold's bank records indicating payments on behalf of customers to third parties, I conclude that there a genuine dispute of material fact as to whether claimants and Knezevich intended to create a bailment, or whether claimants are simply unsecured creditors.[4] This, in turn, creates a genuine issue of material fact as to whether claimants are "owners" for purposes of standing and the innocent owner defense.    Consequently, summary judgment is not warranted.

Finally, it is worthy of note that because there is a genuine dispute of material fact as to whether claimants have standing, I need not address at this juncture whether the government ultimately will prevail in demonstrating a substantial connection between claimants' property and the criminal offenses allegedly committed by Knezevich.

///

///

---

[4] Neither Lamb Bros., Inc. v. First State Bank, 285 Or. 39, 589 P.2d 1094 (1979) (holding that subordination agreement created bailment), nor McBee v. Ceasar, 15 Or. 62 (1887) (holding that deposit of wheat in a public warehouse creates a bailment), cited by Claimants VanHaverbeke and Barney, change the state law principle that a bailment will not be implied where it contradicts the intention of the parties.

12 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, claimants' motions for summary judgment (#29, #32, #49, & #71) are DENIED. The stay of this proceeding as to all claimants except Knezevich has expired. IT IS ORDERED that the parties shall complete discovery within 60 days of the date of this Opinion and Order.

IT IS SO ORDERED.

DATED this __7__ day of August, 2014.

Malcolm F. Marsh
United States District Judge